**CLOSED
CIVIL
CASE**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No. 07-21847-CIV-GRAHAM/TORRES

COASTAL CONSTRUCTION OF SOUTH
FLORIDA d/b/a COASTAL
CONDOMINIUMS,

     Plaintiff,

vs.

ADMIRAL INSURANCE COMPANY,

     Defendant.

_____/

## ORDER

     This action arises out of events occurring during the
construction of a high-rise condominium project owned by Neo
Vertika ("project" or "Neo Vertika").  The Plaintiff, Coastal
Construction of South Florida d/b/a Coastal Condominiums
("Coastal"), was the general contractor for the project, and the
Defendant Admiral Insurance Company ("Admiral") was the liability
insurer of All Fire Services Inc. ("All Fire"), a subcontractor on
the project contractually responsible for installing the fire
protection system for the building.  Near the completion of the
project, certain water pipes used in the fire protection system
failed causing extensive damage to the condominium.  Coastal then
filed a declaratory judgment action seeking coverage under All-
Fire's Commercial Liability Insurance Policy issued by Defendant
Admiral Insurance Company.

## I.  <u>COURSE OF PROCEEDINGS</u>

This cause was initiated on June 12, 2007, when Coastal filed a two (2) Count Complaint against Admiral seeking a Declaration of Rights under the insurance policy issued by Admiral and alleging breach of contract by Admiral for failing to provide coverage under that policy [D.E. 1].  The Complaint was originally filed in the Circuit Court of the Eleventh Judicial Circuit in and For Miami Dade County, Florida, and was removed to this Court by Admiral on July 18, 2007. <u>Id</u>.

On July 22, 2008, Defendant Admiral filed a Motion to Dismiss for Failure to Join an Indispensable Party and For Lack of Subject Matter Jurisdiction wherein Defendant asserted that pursuant to Federal Rule of Civil Procedure 19, All Fire, the named insured under Admiral's policy, is a necessary and indispensable party to this action.  Admiral argued that All Fire would suffer prejudice if the Court determined that All Fire was negligent in the performance of its contract with Coastal [D.E. 72].[1]  Coastal filed a Response to Defendant's Motion wherein it countered that All Fire was not an indispensable party as Coastal was only seeking to have Coastal's rights under the Policy determined, and stated that

---

[1] While the Court acknowledges that dismissal for lack of subject matter jurisdiction including for failure to join an indispensable party may be raised at any time, the Court questions why the Defendant did not raise this issue earlier rather than waiting until two weeks before the start of trial that had been scheduled for almost a year.

-2-

Coastal would agree to only proceed on Count I of the Complaint for Declaratory Relief and forego Count II, Breach of Contract to prevent any potential prejudice to All Fire [D.E. 77].

The three day bench trial in this action commenced on August 4 and 5, 2008 and was completed on September 5, 2008. At the beginning of the trial, the Court entertained argument on Admiral's Motion to Dismiss for failure to join an indispensable Party. Coastal again stated that it was only seeking a determination of whether it was an additional insured, and whether it was therefore entitled to coverage, indemnity and defense under the Policy. Coastal therefore dismissed Count II of its Complaint, Breach of Contract and the trial then proceeded on the Declaratory Relief claim, only. At trial, Plaintiff presented the testimony of three witnesses: 1)Stephen Silverman, Vice President of Coastal Condominiums; 2) Jason Anderson, assistant project manager employed by Coastal Construction to serve as the project engineer for the Neo Vertika project; and, 3) Dr. Dwayne Priddy, an expert in plastics failure. Defendant Admiral presented four witnesses at trial: 1) Dr. Michael Hayes, an expert on CPVC pipe failure analysis;[2] 2) Enrique Borja, an electrical engineer and owner of Engineering Systems Technoloy, Inc., a fire alarm company; 3) Victor Mayes, City of Miami Fire Inspector; and 4) Thomas Mendoza, project manager for Honshy Electric. Neither Party called any

---

[2] CPVC pipe is a pipe made of plastic rather than metal.

witnesses from All-Fire Services, the named insured and subcontractor for the building's fire protection system.

After the conclusion of the trial, Defendant submitted a Notice of Reliance on Supplemental Authority in Support of its Motion for Judgment in its Favor and Motion to Dismiss for Failure to Join Indispensable Party and For Lack of Subject Matter Jurisdiction [D.E. 84]. The Parties then submitted proposed findings of fact and conclusions of law [D.E. 85, 86].

After considering the evidence and the Parties' submissions, the Court makes the following findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52(a).

## II.  **FINDINGS OF FACT**[3]

### A.   Construction of Neo Vertika

On or about June 3, 2004, Coastal, as general contractor, entered into a written contract with Neo Vertika, LLC to provide construction services related to the Neo Vertika Condominium Project, a thirty-six (36) floor condominium building located in Miami, Florida.  On or about August 25, 2004, Coastal entered into a written subcontract with All Fire to provide construction and labor services related to the fire protection system being installed on the Project. The fire protection system was primarily comprised of two major components, the fire alarm system and the

---

[3]    To the extent that Findings of Fact may represent Conclusions of Law, they are adopted as Conclusions of Law.

fire sprinkler system.

The subcontract between All Fire and Coastal Construction required All Fire to secure Commercial General Liability Insurance for its work and to name Coastal and Neo Vertika as additional insureds.

On June 16, 2005, Admiral issued a Commercial General Liability Insurance Policy ("the Policy") to All Fire, for insurance coverage for the period of June 16, 2005 through June 1, 2006. The Policy was renewed for one year on or about June 1, 2006. The Policy included an endorsement for the owner and general contractor as additional insureds as required by the subcontract.

The subcontract also specified that All Fire would use CPVC pipes and fittings manufactured by BlazeMaster in the installation of the fire protection system. All Fire used BlazeMaster materials for floors three (3) through seven (7) of the project but after floor 7, while All Fire still used some BlazeMaster piping, most of the CPVC piping used was manufactured by Victaulic, another pipe manufacturer. In addition, the fittings used above floor 7 were manufactured by another company rather than BlazeMaster. BlazeMaster Pipe and Victaulic Pipe have the name of the manufacturer clearly printed on the outside of their pipe. Coastal did not know that All Fire was using materials other than BlazeMaster on the project.

On February 21, 2006, the fire sprinkler system at Neo Vertika

passed the rough test and the pressure test administered by the City of Miami Fire Department and on April 20, 2006, personnel from the Neo Vertika Project entered into a Fire Alarm Monitoring Agreement with Engineering Systems Technology, Inc.

On April 27, 2006, a Record of Completion was issued for the fire alarm system by Engineering Systems Technology, indicating that the fire alarm system was compliant with the requirements of the National Fire Protection Association.

Sometime during the early morning of April 29, 2006, a fire alarm was activated on the 12th floor of the Neo Vertika Project. The alarm signal was sent to the alarm monitoring company who then notified Coastal of the alarm. Coastal dispatched personnel to the location of the alarm and discovered that the fire sprinkler pipe on the 12th floor had split inside a soffit located in a condominium unit. The pipe break caused water to flow from the pipe down the walls and onto the floor which then seeped down to the floors below causing extensive damage.

On April 29, 2006, Jason Anderson, Project Engineer for Neo Vertika, notified All Fire of the incident and requested that All Fire place its insurance carrier on notice that an insurance claim would be forthcoming.

Construction continued on the building and by May 2, 2006, additional portions of the fire protection system installed by All Fire, including the alarm system, had been tested by the City of

Miami Fire Department.  As of May 30, 2006, All Fire had completed over 90% of its work on the Project.  According to the subcontractor meeting minutes, All Fire last attended a subcontractor meeting on March 14, 2006.[4]

On May 31, 2006, Luis Hidalgo, the Project Manager for the Neo Vertika Project sent a letter notifying All Fire that on May 30, 2006, the fire alarm system was again activated by water flowing on the 21st floor.

On June 2, 2006, the first temporary certificate of occupancy was obtained for floors one through twenty of the building.  The temporary certificate of occupancy for the remainder of the building, floors twenty-seven through thirty-six, was issued at the end of July 2006.  All Fire continued to perform work in the building on floors twenty-seven through thirty six, after the first temporary certificate of occupancy was issued.

---

[4] Admiral has asserted that it is entitled to an adverse inference regarding certain missing documents that Coastal was requested to produce during the discovery phase of this case. Specifically, Admiral alleges that pertinent subcontractor meeting minutes and construction logs are missing and thus Admiral is unable to demonstrate to the Court that All Fire did not attend those meetings, in an effort to support its claim that All Fire had completed its work prior to the first failed pipe incident.  However, the Court does not find that Admiral demonstrated that the conduct of Coastal was done in bad faith and thus in this regard there is insufficient evidence to warrant an adverse inference. See Bashir v. Amtrak, 119 F.3d 929, 931 (11th Cir.1997)(opining in Eleventh Circuit, an adverse inference is drawn from a party's failure to preserve evidence only when the absence of that evidence is predicated on bad faith)(quotations and citations omitted).

Over the course of the next few months, there were numerous additional pipe failures in the fire protection system at various locations in the building.  The pipe failures included splits and pinholes in the pipes which resulted in ruptures and leaks that caused significant damage throughout the building. Ultimately all of the CPVC piping was removed from the building and replaced with steel pipe.  In mid-2007, Coastal hired All Fire to remove and replace the fire sprinkler piping on the project.

Coastal then made a demand to Admiral for insurance coverage under All Fire's Policy pursuant to the Additional Insured Endorsement of that Policy.  Admiral denied that Coastal was entitled to coverage because under the Policy, additional insured coverage was not available if: 1) the work performed by All Fire had been put to its intended use; or  2) All Fire completed its work on installing the fire protection system and the system had been put to its intended use prior to the pipe failure and damage to the property.  Admiral claimed that both of these conditions had occurred prior to the pipe failures.  Admiral also asserted that Coastal was not covered under the Policy as the pipe failure was caused by an organic contaminant and thus the incident was subject to the Microorganism, Biological Organisms and Organic Contaminants Exclusion contained in the Policy.

**B. Contract Between the Parties**

The agreement for the Project between Coastal and All Fire was memorialized in the Contract Agreement and General Conditions between General Contractor and Subcontractor, and included an "Exhibit 'A'" which defined the scope of work between the General Contractor and Subcontractor.    That portion of the contract provides, in relevant part,

      F.    Subcontractor includes a complete, operable and approvable fire protection system, and to perform all required testing to demonstrate same.

      NN.   Subcontractor shall provide everything necessary to maintain, service, and protect the complete Fire Protection system until it is accepted by the Architect/Engineer, Contractor and authority having jurisdiction.

In addition, Article 3 of the Contract, directs that the subcontractor's commercial general liability policy shall be endorsed to add the contractor and owner as additional insureds with respect to the performance of the subcontractor's operation under the subcontract agreement and the contract documents.

**C. Commercial General Liability Policy**

The Commercial General Liability Policy that was secured by All Fire as required by the subcontract between All Fire and Coastal Construction, includes an endorsement which provides for coverage for an additional insured as follows:

        ADDITIONAL INSURED-OWNERS, LESEES OR CONTRACTORS-SCHEDULE PERSON OR ORGANIZATION

A. Section II-Who is an Insured is amended to include as an additional insured the person(s) or organization(S) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused in whole or in part, by:

      1. Your acts or omissions; or

      2. The acts or omissions of those acting on your behalf; in the performance of your ongoing operation for the additional insured(s) at the location(s) designated above.

B. With respect to the insurance afforded to these additional insureds, the following exclusions apply:

This insurance does not apply to "bodily injury" or "property damage" occurring after:

    1.    All Work, including materials, parts or equipment furnished in connections with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or

    2.    That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as part of the same project.

Coastal sought coverage under these provisions of the Additional Insured Endorsement of the Policy and Admiral argued that the exclusions included in this Endorsement did not allow Coastal to be covered as an additional insured.

## D. Cause of the Pipe Failure

Sometime after the initial pipe failure, Dr. Dwayne Priddy, an expert on plastic failures, conducted failure analysis on some of the pipes and fittings at the Project and concluded that the cause of the pipe failures was exposure to environmental stress crack agents. Dr. Priddy concluded that one of the sources of the stress crack agents was the use of pipe thread sealants that were not compatible with CPVC pipe. Dr. Priddy also noted that CPVC pipe, which is made of plastic, has to be protected from sunlight and stated that he was "bothered" by the use of both CPVC and metal pipe at the Project as thread cutting oils used on metal pipes are not compatible with CPVC piping.

Dr. Priddy concluded to a scientific certainty that the primary cause of the pipe failures were environmental stress crack agents, that weakened the pipe and ultimately resulted in a crack or a pinhole in the affected pipe. He explained that the manufacturer of the piping suggests or requires that certain sealants be used and issues a list of thread sealants that are not approved or not compatible with CPVC. He stated that in this case, he didn't know what brand of sealant was used on the pipes.

Dr. Priddy further concluded that weak "knit lines" were a secondary cause of the failure of the pipes, which occurs during the manufacturing process. In addition, Dr. Priddy testified that there is only one type of cutting oil approved for use on CPVC

-11-

pipes, but stated that in this case, he didn't know what type of cutting oil was applied to determine whether an incorrect thread cutting oil was used on the pipe. Dr. Priddy also stated that he found that some of the source of contaminants was the use of "ABF" lined metal pipes, which contain contaminants that are not compatible with CPVC pipe. Dr. Priddy ruled out the water from the City of Miami as being the source of the contaminants.

Dr. Michael Hayes a mechanical engineer and an expert in CPVC failure pipe analysis was retained in late summer of 2006 to consult on issues related to failed pipes at Neo Vertika, in order to determine what caused the failures.  Dr. Hayes' analysis included water sample testing from samples taken from both inside and outside of the building.  The water testing revealed the presence of carbon in the water, including methylene chloride and chloroform, both of which are hydrocarbons and organic solvents.

Dr. Hayes could not state to a reasonable degree of scientific probability what caused the failure of the CPVC pipe fractures, but was able to conclude that environmental stress cracking occurred from the inside of the pipe, but was unable to identify the exact contaminant which caused the environmental stress cracking.

Dr. Hayes was unable to conclude whether any actions taken by All Fire caused any contaminants to enter into the system and testified that his conclusion was the same as Dr. Priddy's finding, in that regard.

## III. <u>CONCLUSIONS OF LAW</u>[5]

### A.    The Declaratory Judgment Act

The Declaratory Judgment Act, 28 U.S.C.A. § 2201, provides in relevant part, "[i]n a case of actual controversy within its jurisdiction...any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought..." 28 U.S.C.A. § 2201.

The Plaintiff in this matter seeks a declaratory judgment as to its rights under the insurance Policy issued by Admiral.  While the Plaintiff initially sought declaratory relief under the Florida Declaratory Judgment Statute, §86.021, that statute, like the Federal Declaratory Judgment Act, is procedural in nature. <u>See</u>, <u>Wendy's International, Inc., v. City of Birmingham</u>, 868 F.2d 433, 435 (11th Cir. 1989)(reiterating that Declaratory Judgment Act is procedural only)(citations omitted).  Thus, as this matter is before the Court on diversity jurisdiction, the federal declaratory statute governs this matter. <u>Manuel v. Convergys Corp</u>. 430 F.3d 1132, 1138 n.3 (11th Cir. 2005)(stating "[t]here is little doubt...that the district court had to apply the Declaratory Judgment Act, 28 U.S.C. 2201, et seq. rather than the state declaratory judgment act, in this action"); <u>See also</u>, <u>Galindo v.</u>

---

[5] To the extent that Conclusions of Law may represent Findings of Fact, they are adopted as Findings of Fact.

ARI Mutual Ins. Co., 203 F.3d 771, 777 n. 10 (11th Cir. 2000)(noting that federal courts sitting in diversity may, after removal from state court, determine rights of interested parties pursuant to 28 U.S.C. § 2201). As a practical matter, however, the elements required under the federal or state declaratory judgment acts are not materially different. Compare Malowney v. Federal Collection Deposit Group, 193 F.3d 1342 at 136, with Floyd v. Guardian Life Ins. Co., 415 So.2d 103, 104 (Fla. 3d DCA 1982). Thus, the Court will evaluate Plaintiff's claim for declaratory relief under the Federal Declaratory Judgment Act.

In addition, while not raised by either Party, the Court is aware that a court has the discretion to decline to issue relief pursuant to the federal declaratory relief statute in certain circumstances. Wilton v. Seven Falls Co., 515 U.S. 277, 289-90, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995). However, in this case at the time of trial, there were no pending state actions related to this case. See, Federal Reserve Bank of Atlanta v. Thomas, 220 F. 3d 1235, 1247 (1th Cir. 2000)(reversing district court that dismissed declaratory action where no state court action available). In addition, Florida law is clear on the state issues raised herein and thus this Court may correctly apply Florida state substantive law. See, Guideone Elite Ins. Co. v. Old Cutler Presbyterian Church, Inc., 420 F.3d 1317 (11th Cir. 2005)(noting Florida's state court was better suited to construe its own unresolved issue of

-14-

state law rather than federal courts sitting in diversity in declaratory judgment action).    Further, the Parties have presented no other significant reasons, other than those discussed below, for this Court not to entertain this matter. See, e.g. Atlantic Casualty Ins. Co. v. GMC Concrete Co., Inc., 2007 WL 4335499 (S.D. Ala.)(collecting cases and discussing district court's discretion to refrain from entertaining declaratory judgment action). Accordingly, the Court will entertain the instant action pursuant to the Federal Declaratory Judgment Act.

   **B.   The Named Insured, All Fire as a Required Party**

   The next issue the Court must resolve is whether the matter should be dismissed for failure to join an indispensable party. As stated above, just before trial Defendant filed a Motion to Dismiss for Failure to join an indispensable party and for lack of subject matter jurisdiction. That Motion was denied at trial.   However, after trial, the Defendant filed additional materials in support of its Motion, which this Court construes as a Motion for Reconsideration. The Court has reviewed the materials and concludes, as it did at trial, that Defendant's Motion is due to be denied.

   First, whether an absent party is indispensable is governed by Federal Rule of Civil Procedure 19. In making the determination, the court first assesses whether the person in question fits the definition of those who should "be joined if feasible" under Rule

19(a). See Provident Tradesmens Bank v. Patterson, 390 U.S. 102, 118 (1968). Under this inquiry, a person should be joined, when feasible, if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (I) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. Fed.R.Civ.P. 19(a).

Second, if the court determines that the person is an indispensable party, but joinder of that party is not feasible, then the Court must inquire whether, applying the factors enumerated in Rule 19(b), the litigation may continue. Challenge Homes, Inc. v. Greater Naples Care Ctr., 669 F.2d 667, 669 (11th Cir.1982). "The court must determine whether, in equity and good conscience the action should proceed among the parties before it, or should be dismissed." Fed.R.Civ.P. 19(b). The court engages in this analysis by applying four factors: 1) to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; 2) the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; 3)

-16-

whether a judgment rendered in the person's absence will be adequate; and 4) whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder." Id.  "In making the decision of whether a Party is indispensable, pragmatic concerns, especially the effect on the parties and the litigation, control." Challenge, 667 F.2d, at 669 (internal citations and quotation marks omitted).

In answering the first question under Rule 19(a), it is clear that complete relief can be afforded to the Parties, as Plaintiff Coastal Construction only seeks a declaration of whether it is entitled to coverage as an additional insured under the All Fire General Liability Policy.  However, as to the second question, whether All Fire's absence will impede All Fire's ability to protect its interests, Admiral argues that All Fire has an interest in the outcome of this litigation because if coverage is denied, then All Fire will be denied coverage that it might otherwise be entitled to if it were a party to this action. Coastal, on the other hand, argues that a declaratory judgment as to the coverage for Coastal as an additional insured does not require a finding of liability by All Fire, and thus, All Fire will not be prejudiced by the outcome of the present action.  The Court finds that All Fire is not an indispensable Party to this litigation as Coastal only seeks a determination as to Coastal's rights under the Policy, and

does not seek an adjudication as to the rights of All Fire.[6]
Further, the Parties herein are not likely to be subjected to
double or inconsistent verdicts as the rights of the Parties,
presently before this Court will be fully resolved by this matter.

In the alternative, assuming arguendo that All Fire is an
indispensable Party to this action, the Court finds that the
analysis under Rule 19(b) would still allow this action to proceed.
First, it is without dispute that All Fire cannot be joined to this
proceeding as its joinder would destroy diversity and deprive this
Court of jurisdiction. Based upon the Rule 19(b) factors, the Court
finds that in equity and good conscience this action should proceed
among the parties before the Court.  First, the Parties before the
Court have engaged in extensive litigation in this matter, and
expended considerable time and expense in this action.  Defendant
Admiral participated in the litigation for 12 months before raising
the indispensable party issue two weeks before trial.  In addition,
any prejudice that might be suffered by All Fire may be lessened by
protective measures included in this Court's judgment.   More
specifically, as discussed below, this Court limits its findings to
the evidence presented in this action, only to the extent necessary

---

[6] Furthermore, since All Fire is not a party to this
litigation, the doctrine of res judicata would not apply.  See
Independent Fire Insurance Company v. Paulekas, 633 So.2d 1111,
1113 (Fla. 3rd DCA 1994) (holding that "[a] declaratory action
obtained by an insurer against its insured is not binding on a
third-party claimant who was not a party to the declaratory
judgment action").

to determine if Coastal is an additional insured under the Policy. Further, a judgment in All Fire's absence will be adequate for the Parties in this matter.   Accordingly, the Court finds that dismissal in this matter is unwarranted.

### C. Burden of Proof

Having decided that the Court is able to resolve the issues presented by the Parties herein, the Court now turns to the Admiral Insurance Policy to determine if Coastal is entitled to coverage as an additional insured under the facts presented at trial on this matter.

It is well-settled that, in diversity actions such as the instant case, federal courts must apply the substantive law of the forum state. Keller v. Miami Herald Publ'g Co., 778 F.2d 711, 714 (11th Cir.1985)(citing Erie R.R. v. Tompkins, 304 U.S. 64 (1938). Thus, this Court must apply Florida law in analyzing the provisions of insurance Policy at issue in this case. See Technical Coating Applicators, Inc. v. United States Fid. & Guar. Co., 157 F.3d 843, 844 (11th Cir.1998). Significantly, Florida law places the burden of proving that a claim is covered by the insurance policy on the insured. Hudson Insurance Co. v. Double D Management Co., Inc., 768 F.Supp. 1542 (M.D.Fla.1991). However, the burden of proving an exclusion to coverage is on the insurer. Id.

Accordingly, in this case, Plaintiff Coastal Construction has the burden of proving that it is entitled to coverage as an

-19-

additional insured under the Policy.  If Coastal is successful in meeting this burden, then the Defendant Admiral bears the burden of proving that one of the three exclusions at issue applies to the facts herein and that Coastal's coverage is excluded under the Policy.

Thus, the starting point for determining whether Coastal is entitled to coverage is the language of the Policy, and a determination of whether Coastal is an additional insured thereunder.

### D. Interpretation of Policy

Under Florida law, insurance contracts are construed according to their plain meaning. Taurus Holdings, Inc., v. U.S. Fidelity & Guaranty Co., 913 So. 2d 528 (Fla. 2005).  Moreover, 'if a policy provision is clear and unambiguous, it should be enforced according to its terms whether it is a basic policy provision or an exclusionary provision. Id. at 532. (quoting Hagen v. Aetna Cas. & Sur. Co., 675 So.2d 963, 965 (Fla. 5th DCA 1996)).  Based upon the plain meaning of the language of the Policy at issue and application of Florida law interpreting the Policy, the Court finds that for the following reasons Coastal is not an additional insured under the Policy.

In Garcia v. Federal Ins. Co., 473 F.3d 1131 (11th Cir. 2006), the Eleventh Circuit examined a "covered person" clause in an insurance policy that defined the additional covered person as "any

other person with respect to liability because of acts or omissions of the insured." Id. at 1136.   The court concluded that it was unclear under Florida law whether the policy language was ambiguous and what interpretation would be given to the clause, and thus the Eleventh Circuit certified the issue to the Florida Supreme Court.[7]

In answering the certified questions from the Eleventh Circuit, in Garcia v. Federal Ins. Co., 969 So.2d 288, 292 (Fla. 2007) the Florida Supreme Court examined the plain meaning of the phrase "with respect to liability because of acts or omissions" of the named insured, and particularly focused on the words "because of" to determine whether coverage existed for an additional insured.   In so doing, the Florida Supreme Court stated,

> When considered in context, these words clearly indicate that an additional insured is only entitled to coverage concerning liability that is caused by or occurs by reason of acts or omissions of the named insured. An additional insured's liability thus must be caused by the acts or omissions-that is, the negligence-of the named insured.

Id. at 292.(Emphasis added).   The Supreme Court of Florida reached this conclusion after reviewing other cases interpreting similar

---

[7]The Eleventh Circuit certified the following two questions to the Florida Supreme Court : 1) Is an insurance policy that defines a covered person as any other person with respect to liability because of acts or omissions of the insured ambiguous? and, 2) Does an insurance policy providing coverage for an additional insured 'with respect to liability because of acts or omissions' of the named insured limit coverage to instances in which the additional insured is vicariously liable for the acts of the name insured?

language. Id. (reviewing holdings and analysis in Container Corp. Of
America v. Maryland Casualty Co., 707 So.2d 733 (Fla. 1998) and
Consolidation Coal Co. v. Liberty Mutual Ins. Co., 406 F.Supp. 1292
(W.D. Pa. 1972)).  Significantly, the Supreme Court of Florida
noted that the phrase "because of", which was the language included
in the policy at issue in that case, required that the additional
insured's liability be "caused by" the acts or omissions of the
named insured.  Id.  The court then concluded that the phrase
"caused by" was more limiting than the phrase "arising out of" and
specifically held, "the phrase 'any other person with respect to
liability because of acts or omissions' of the named insured
cover[ed] only additional insured's vicarious liability for the
negligent acts or omissions of the named insured." Id. at 293-94.
Thus, the Florida Supreme Court made clear that in order for an
additional insured to be covered when the plain language of the
Policy requires the liability to be "because of", or "caused by"
the acts or omissions of the named insured, there must be a showing
that the named insured's acts or omissions were negligent.

Similarly, in the instant action, the language of the Policy
which provides coverage for an additional insured states "...an
Insured is amended to include as an additional insured the
person(s) or organization(s) shown in the Schedule, but only with
respect to liability for 'bodily injury', 'property damage' or
'personal and advertising injury' caused in whole or in part, by

-22-

Your acts or omissions." Thus, in order for an additional insured to be covered under the Policy, the additional insureds' liability must be caused by the negligence of All Fire.

### E. Proof of Negligence by the Named Insured

The Court will now examine whether Coastal has met its burden of demonstrating that All Fire's negligence in its installation of the fire protection system gave rise to liability under the Policy as required by the Florida Supreme Court's ruling in Garcia.

In Florida, to prove an action for negligence the plaintiff must establish three elements: (1) The existence of a duty owed by the defendant to the plaintiff;(2) A failure on the part of the defendant to perform that duty; and, (3) An injury or damage to the plaintiff proximately caused by such failure. Strasser v. Yalamanchi, 783 So. 2d 1087, 1094 (Fla. DCA 2001). Accord, Florida Power & Light Co. v. Lively, 465 So.2d 1270, 1273 (Fla. 3d DCA 1985) (stating the essential elements of negligence as duty, breach of duty, legal cause and damage).

While it is not disputed that All Fire owed Coastal a duty to install the fire protection system in a non-negligent manner, based upon the evidence presented at trial, the Court finds that the Plaintiff has failed to establish that All Fire breached that duty.[8] Specifically, Coastal proceeded on two theories regarding

_____

[8] The Court makes no determination as to whether All Fire might be found liable for negligence in a separate tort action related to its installation and workmanship in providing a fire

-23-

the acts or omissions of All-Fire as causing the damage to the Neo
Vertika Project.   First, Coastal argued that defective and/or
faulty pipe installation by All-Fire caused the pipes to fail and
second, that the improper substitution of different piping for that
required under the sub contract caused the damage to the Project.
The Court will examine each theory, in turn.

      I)   Negligent Installation of Pipe

      At trial, as discussed above, two witnesses testified about
the cause of the pipe failures, Dr. Dwayne Priddy and Dr. Michael
Hayes.   Dr. Priddy concluded that the pipe failures were due to
environmental stress crack agents and that one source of the stress
agents were contaminants from pipe thread sealants that were not
compatible with CPVC pipes. At first blush, Dr. Priddy's testimony
seemingly supports a finding that All Fire was negligent in its
selection of the pipe thread sealant used on the pipes.   However,
a careful reading of his testimony reveals that Dr. Priddy only
reached a conclusion to a reasonable scientific degree of certainty
that the CPVC pipe failures at Neo Vertika were caused by
environmental stress crack agents.   He did not reach any conclusion
with a degree of certainty as to the exact source of the agents,

---

protection system at the Neo Vertika Project.   Rather, the Court
only finds that based upon the evidence presented in this
Declaratory Judgment Action, Coastal failed to meet its burden of
demonstrating the incident in question arose from All Fire's
negligence for purposes of finding Coastal an additional insured
under the insurance Policy.

although he referenced several possible sources of the contamination. In fact, Dr. Priddy admitted that he did not have an absolute degree of certainty as to the exact source of the contamination. More importantly, Dr. Priddy's testimony did not establish that All Fire's actions were negligent. In fact, when asked by the court whether whoever installed the pipes used the wrong sealant, Dr. Priddy testified that he did not know the brand of sealant that was used. In addition, when asked about how to determine whether certain pipe sealants should be used with CPVC piping, he stated that BlazeMaster and/or Lubrizol issues an extensive list of thread sealants that are not compatible with CPVC piping. Dr. Priddy did not offer any testimony regarding what thread sealant was used at the Project, how it was selected, whether it was one of the sealants listed on the non-compatible list, how it was applied, or even who applied the pipe thread sealant. Thus, it is impossible to tell from Dr. Priddy's testimony alone whether All Fire selected an improper sealant, whether there was a defect in the sealant, or if there were sealants that were misidentified on the BlazeMaster or Lubrizol list as being CPVC compatible. It is further unclear if the sealant used was accepted in the industry as a proper sealant that could be used in the installation of a fire protection system.

In addition, Dr. Priddy concluded that there were weak "knit line deficiencies" in the pipes, which he described in his earlier

-25-

testimony as being a phenomenon that occurs during the process of molten CPVC resin being injected into a mold. Dr. Priddy identified the weak knit lines as being the secondary cause to the pipe failures. However, there was no evidence presented that All Fire was in any way connected with the molten process and thus this cause of the pipe failure may not be attributed to All Fire, either.

As to the other concerns that Dr. Priddy raised about the pipe failures in the fire protection system, while Dr. Priddy noted that he observed excessive glue on the pipes, he did not conclude that the glue was the cause of the pipe failure. In addition, Dr. Priddy discussed the potential problems of CPVC piping being exposed to the sun, yet Coastal failed to demonstrate through the introduction of evidence that any possible improper exposure to the sun was caused by All Fire. Dr. Priddy also testified that he did not know what type of cutting oil was used on the Project, and thus was unable to conclude whether an incorrect thread cutting oil was used.

Further, there was absolutely no testimony presented by the Plaintiff through any other witnesses regarding All Fire's actual performance in installing the fire protection system. Thus, the Court is unable to conclude if All Fire used improper methods in the installation of the fire protection system that caused the pipe failure. Thus, a finding of negligence against All Fire in this

regard would be purely speculative.[9] See, <u>City of New Smyrna Beach</u> <u>Utilities  Comm.  v.  McWhorter</u>,  418  So.2d  261,  262  (Fla. 1982)(finding  that  merely  showing  occurrence  and  result  was insufficient to demonstrate necessary elements of negligence).

Moreover, the Defendant's expert, Michael Hayes testified that the  source  of  the  contaminant  in  the  pipes  was  unknown. Considering this testimony, in light of the speculative nature of Dr. Priddy's testimony about the source of the contamination, the Court  finds  that  the  Coastal  has  failed  to  meet  its  burden  of showing  that  All  Fire's  negligence  was  the  cause  of  the introduction of environmental stress agents to the pipe system at the Project.

ii) Failure to use BlazeMaster Piping

Coastal also asserts that All-Fire failed to use BlazeMaster Piping as specified in the contract, and that this failure was a contributing cause of the pipe failures on the project.  However, the Plaintiff's argument fails for several reasons.

First, as discussed above, pursuant to the ruling of the Supreme  Court  of  Florida,  an  act  or  omission  giving  rise  to coverage under the Policy necessarily requires a showing that the Defendant  breached  its  duty  and  thus  was  negligent  in  its

---

[9] The Court notes that this is not a case where the existence and cause of any defect is presumed.  The Plaintiff did not argue such a theory and this is not a product defect case. Thus, the Plaintiff had the burden of demonstrating a breach of duty and causation by All Fire in order to establish negligence.

performance.   The fact that All Fire may have breached the subcontract  between itself and Coastal by failing to use the CPVC pipe manufactured by BlazeMaster, does not, in and of itself establish that All Fire was negligent in its installation of the fire protection system.

Second, the testimony of Dr. Dwyane Priddy does not establish that the use of Victaulic Pipe instead of BlazeMaster was negligent.  By Dr. Priddy's own testimony, both BlazeMaster and Victaulic are approved by Underwriters Laboratories, accepted in the industry and widely used.  When Dr. Priddy was asked about why one type of pipe might be used over the other, he did not know the difference in the prices between the two, and simply stated that he had a lot more Victaulic failed pipe samples come through his laboratory than BlazeMaster pipes. The testimony offered by Dr. Priddy in this area does not rise to the level of establishing that the use of Victaulic pipe in a fire protection system is negligent.

Further, significantly, Dr. Priddy stated the following in suggesting a remedy to eliminate further pipe failures, "...since we did not have an absolute degree of certainty as to the exact source of the contamination, in my opinion, it would not have been wise to just do the replacement with new CPVC, because that would not have guaranteed no further failure.  So I recommended metal piping because that would be proof positive guarantee that you would not have future failures due to the presence of these

hydrocarbons." Thus, given that the testimony demonstrates that All Fire used BlazeMaster on the first seven floors of the project, it is puzzling that both types of piping would have to be replaced if the CPVC pipe failures were due to the use of Victaulic pipe rather than BlazeMaster. Rather, as the exact source of the contaminants were not known, Dr. Priddy, again, was unable to establish that the used of Victaulic pipe rather than Blazemaster was negligent.

In an effort to meet its burden, the Plaintiff has cited to several cases to support its claim that it is an additional insured under the Policy due to All Fire's faulty workmanship. Specifically, Coastal has directed this Court to <u>United States Fire Ins. Co. v. J.S.U.B., Inc.</u>, 979 So.2d 871 (Fla. 2007) for the proposition that a subcontractor's defective work is an occurrence for purposes of determining coverage under a general liability policy. However, Plaintiff misconstrues the factual scenario and the holding in that case. In that case, the liability policy was issued to the general contractor and thus the general contractor was unquestionably covered as an insured under the policy. The issue as stated by the court in that case was "...whether a...commercial general liability policy with products-completed operations hazard coverage, issued to a general contractor, provides coverage when a claim is made against the contractor for damage to the completed project caused by a subcontractor's

defective work." Id. at 874-75.   Thus, that case does not address the issue raised in the instant matter, whether Coastal qualifies as an additional insured under the subcontractor's policy for liabilities caused by the subcontractor's acts or omissions.   The Policy at issue in this matter is not issued to the general contractor, but rather the general contractor is seeking to be covered by the subcontractor's liability policy.   In addition, in the J.S.U.B. case, it was undisputed that the damage to the property at issue was caused by the subcontractors' use of poor soil and improper compaction and testing.   Id.   In this case, it is disputed that All Fire's negligence caused the pipe failure.

Also, Plaintiff cites to Auto Owners Ins. CO. v. Travelers Casualty & Surety Co., 227 F. Supp. 2d 1248 (M.D. Fla. 2002), which again did not deal with the issue of an additional insured; rather, it dealt with the definition of an "occurrence" under the Policy and thus is not applicable to this matter.

Similarly, the other line of cases presented by Plaintiff for the proposition that the incorporation of a subcontractor's faulty work into the finished project of another product inflicts injury are not relevant for the instant case.   Those cases deal with the definition of property damage as opposed to who is an additional insured.   See, Zurich American Ins. Co. v. Curtrale Citrus Juices USA, Inc., 2002 WL 1433728 (M.D. Fla.) Aetna Cas. Inc. Co. v. Monsato Co., 487 So. 2d 398 (Fla. 1st DCA 1986)).

Simply put, the Plaintiff has failed to point to any case law that supports a finding that Coastal is an additional insured under the Policy, absent a showing that the named insured was negligent. Moreover, throughout the course of trial, Plaintiff maintained, including in closing argument, that a finding of negligence was not necessary. Plaintiff asserted that the Court only needed to find that an act or omission of the named insured gave rise to the pipe failure. This position is flatly at odds with the Supreme Court of Florida's holding in <u>Garcia</u> as discussed above.

Accordingly, the Court finds that the Plaintiff has failed to meet its burden in demonstrating that it is an additional insured under the Policy at issue. Thus, the Court need not reach the issue of the exclusions under the policy which was raised by Admiral as it is clear that Coastal is not an additional insured.

### III. <u>CONCLUSION</u>

Based on the foregoing, it is hereby

**ORDERED AND ADJUDGED** that Defendant's Motion for Reconsideration of its Motion to Dismiss for Failure to Join an Indispensable Party and for Subject Matter Jurisdiction is **DENIED**. It is further

**ORDERED AND ADJUDGED** that a Final Judgment be entered in favor of Defendant Admiral Insurance Company on Plaintiff's Declaratory Judgment Action. It is further

**ORDER AND ADJUDGED** that this Matter is **CLOSED** and all pending

-31-

Motions are **DENIED as MOOT**.

     **DONE AND ORDERED** in Chambers at Miami, Florida, this 27th day of February, 2009.

                                      DONALD L. GRAHAM
                                      UNITED STATES DISTRICT JUDGE

cc:  U.S. Magistrate Judge Torres
      Counsel of Record

-32-